

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
11/29/2012

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 12-34034 |
| EDWARD E LAMAR; dba HEAVENLY | § | CHAPTER 13 |
| HOOPZ SPORTS, LAURI S LAMAR | § | |
| | § | |
| Debtor(s). | § | DAVID R. JONES |

## MEMORANDUM OPINION
(Docket No. 30)

On August 27, 2012, the Court conducted a hearing to consider the Debtors' Objection to the Claim of State of Texas & Farrell Bush (Claim No. 3) [Docket No. 30]. In support of their objection, the Debtors offered both testimonial and documentary evidence. The State of Texas offered no evidence and Farrell Bush f/k/a Farrell Sanders did not appear or otherwise participate in the proceeding. Neither party addressed the substantive law governing this matter. For the reasons set forth below, the Court finds that the proof of claim filed by the State of Texas and Farrell Bush should be disallowed in its entirety. The Court makes no findings with respect to any claim for overpayment by Mr. Lamar. A separate order will issue consistent with this opinion.

### Relevant Factual Background

1. Edward and Laurie Lamar (the "Debtors") filed a voluntary petition under chapter 13 of the Bankruptcy Code on June 1, 2012 [Docket No. 1].

2. On June 13, 2012, the State of Texas filed a proof of claim on behalf of itself and Farrell Bush f/k/a Farrell Sanders [Proof of Claim No. 3] asserting a priority claim in the amount of $33,776.84 (the "Claim"). The basis for the proof of claim is listed as "DOMESTIC SUPPORT OBLIGATION." Attached to the proof of claim is a "financial activity report" from the child support division of the Texas Attorney General (the "Financial Activity Report"). The proof of claim incorrectly represents that the amount of the Claim does not include any interest or other charges.

3. In fact, the Claim is based entirely on alleged unpaid interest owed on a child support judgment. It is undisputed that Mr. Lamar paid the underlying support obligation. It is likewise undisputed that Mr. Lamar has generally acted in a responsible fashion in addressing his paternal obligations.

4. Mr. Lamar and Ms. Bush became parents on February 5, 1979 when their son, Edward Lamar, Jr., was born. For unknown reasons, their relationship came to an end. On May 27, 1989, the Circuit Court of the 13th Judicial District, Hillsborough County, Florida, entered an order requiring Mr. Lamar to make bi-weekly child support payments to Ms. Bush in the amount of $88.63 (the "Florida Order") [Supplemental Exhibit, Docket No. 63]. The Florida Order does not provide for the accrual of interest in the event of a default in the payment of the ongoing support obligations.

5. In addition, Mr. Lamar was required to pay the sum of $10,498.92 to Ms. Bush in care of the State of Florida for amounts advanced by the State of Florida for the benefit of Mr. Lamar's child under the Florida Aid to Families with Dependent Children Program. This amount was payable in bi-weekly installments of $15.00. The Florida Order likewise does not provide for the accrual of interest in the event of a default in the payment of this obligation.

6. Mr. Bush subsequently moved to Texas and fell behind in his support payments. In 1996, the State of Texas filed an action in the 310th Judicial District Court of Harris County, Texas (the "Texas Court"), Cause No. 96-62177, on behalf of Ms. Bush against Mr. Lamar to enforce the support obligations under the Florida Order. Mr. Lamar voluntarily appeared *pro se*. On March 7, 1997, the Texas Court entered its Order Enforcing Child Support Obligation (UIFSA) with Mr. Lamar's consent (the "Texas Judgment").

7. The Texas Judgment affirmed the Florida Order's requirement that Mr. Lamar make ongoing bi-weekly support payments of $88.63. In addition, the Texas Judgment confirmed an arrearage of $27,636.33 under the Florida Order (the "Arrearage"). The Texas Judgment specifically provides:

> IT IS THEREFORE ORDERED that the judgment in the amount of $27,636.33 together with interest at the legal rate of 12% per annum as of January 7, 1997, is granted against EDWARD E LAMAR in favor of the Attorney General of Texas as child support for collection and distribution in accordance with law, for which let execution issue.
>
> Obligor is ORDERED to pay toward said judgment . . . $15 each [sic] bi-weekly beginning the 21st day of January, 1997, payable on or before the date and on or before the same day(s) of each bi-weekly thereafter until the first payment date after the regular child support obligation ends; thereafter, the remaining amount of said judgment shall be paid at the rate of $225 each month until fully paid; the withholding order authorized herein shall include such payments in addition to current support.

8. Contemporaneously with the Texas Judgment, the Texas Court entered an Employer's Order to Withhold Earnings for Child Support (the "Wage Order"). The Wage Order required Mr. Lamar's employer to withhold specific dollar amounts to satisfy both his ongoing support obligation as well as the Arrearage. The Wage Order also fixed June 30, 2008 as the termination date for the withholding. The total amount of payments set out in the Wage Order equals the amount of the Arrearage plus all ongoing child support payments.

9. On July 18, 2012, the Debtor filed an objection to the Claim [Docket No. 30]. The State of Texas filed its response on August 9, 2012 [Docket No. 39]. On August 21, 2012, the Debtors filed their brief in support of the objection [Docket No. 46].

10. The Court conducted a hearing on the Debtors' objection on August 27, 2012. The Texas Judgment, the Wage Order and the Financial Activity Report (Exhibit 3) were admitted into evidence. Mr. Lamar testified that he, while acting *pro se*, agreed to pay the total amount reflected in the Wage Order in satisfaction of his obligations under the Florida Order and the Texas Judgment. Mr. Lamar further testified that he made payments pursuant to the Wage Order until May 2006 when he lost his job. This payment default occurred in the 111th month of the 123-month Wage Order. Mr. Lamar stated he was re-employed in 2009 and immediately resumed payments under the Wage Order. Mr. Lamar's testimony was not disputed and the Court finds Mr. Lamar to be a credible witness. No other witnesses or exhibits were offered.

11. After reviewing the testimony and the documentary evidence, the Court entered an order on September 21, 2012 requesting the parties supplement the record with the Florida Order [Docket No. 59]. On September 28, 2012, a copy of the Florida Order was filed with the Court as a supplemental exhibit [Docket No. 63].

## Analysis

12. The Court has jurisdiction over this contested matter pursuant to 11 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. 157(b)(2)(A), (B) and (O). The Court has constitutional authority to enter a final order in this matter.

13. The Debtors object to the Claim and request that it be disallowed in its entirety as the amount of the Claim is based solely on unpaid interest that began accruing in 1997 on the Arrearage under the Texas Judgment and that the underlying amounts owed have been paid in full. The parties do not dispute that Mr. Lamar has paid all of the ongoing support obligations as well as the principal amount of the Arrearage set forth in the Texas Judgment.

14. The Debtors argue that the 12% interest rate specified in the Texas Judgment was to be applied only upon the event of a default. The Debtor argues that if interest was to accrue, it should have been only upon the 2006 default. The unpaid balance of the Arrearage at that time was $2,689.57. If correct, the maximum amount of interest that could remain unpaid is less than $2,000. Since he resumed making payments in 2009, Mr. Lamar has paid approximately $17,138. Mr. Lamar therefore argues that he has actually overpaid his obligation. Without addressing the overpayment issue, the Debtors assert that the Claim should be disallowed in its entirety.

15. The State of Texas asserts that the Debtor is obligated to pay interest on the Arrearage at a rate of 12% per annum from the date of entry of the Texas Judgment in 1997. The State of Texas argues that the Wage Order is not substantive and should have no legal import on this Court's determination of the amount of the Claim or the parties' intent. Following the State's logic, the fact that the payments set out in the Wage Order equal the ongoing support and

Arrearage amounts has no legal significance and is nothing more than mere coincidence. Likewise, the Wage Order is merely a procedural mechanism by which child support is collected and should not be given any weight in determining Mr. Lamar's obligations. The State of Texas posits that Mr. Lamar's obligations are set out in the Texas Judgment and that it is entitled to collect interest on the unpaid Arrearage until paid in full.

16. The State of Texas asserts that the accrual of interest is integral to the Texas Judgment and is mandated by Section 157 of the Family Code. The Court agrees with the State's assertion with regards to child support orders originating in Texas. *See* TEXAS. FAM. CODE. ANN. §§ 157.265 and 157.267 (Vernon 2011). Herein lies the fallacy of the State's position. Neither the Debtors nor the State of Texas addressed the import of the Texas Judgment being the product of an action brought under the Uniform Interstate Family Support Act ("UIFSA"), adopted in Texas as Chapter 159 of the Family Code[1] to enforce a **Florida** support order. This fact is the gravamen of this proceeding and strongly influences the Court's decision.

17. The UIFSA was promulgated with the goal of protecting a child support order entered in one state from any interference or alteration by any other state's courts. In particular, UIFSA was created in an effort to correct the problem of multiple jurisdictions issuing multiple and inconsistent orders. *In re Garrett*, 315 B.R. 431, 436 (Bankr. E.D. Tex. 2004).

18. The UIFSA provides a mechanism for the enforcement of support orders issued by a court in a foreign state. Under the act, the responding court must defer to the home state's laws and any orders of the issuing court in all matters apart from enforcement procedures. The National Conference of Commissioners of Uniform State Laws (NCCUSL) Comment to the UIFSA provision codified in the Texas Family Code at § 159.604 explains:

> In sum, the local tribunal applies its own familiar procedures to enforce a support order, but it is clearly enforcing an order of another state and not an order of the forum.

19. While the responding state may utilize local procedures to enforce a support order, it must defer to the home state's substantive law. The Family Code provides guidance in identifying attributes of an order that are substantive versus those which are procedural. FAMILY CODE § 159.604 - CHOICE OF LAW provides that Texas law will govern in cases involving the enforcement of child support orders except with regards to "*the computation and payment of arrearages and accrual of interest on the arrearages*" [emphasis added]. The statute further provides that the Texas court shall apply the law of the state that originally issued the child support order "*including the state's law on interest on arrearages, current and future support and consolidated arrearages*" [emphasis added]. TEXAS. FAM. CODE. ANN. § 159.604 (Vernon 2011). Section 159.604 specifically identifies the calculation of arrearages and application of interest as being substantive matters which are determined by the state law of the issuing court.

---

[1] In 1993, the Texas Legislature adopted the Uniform Interstate Family Support Act. *See* TEXAS FAMILY CODE CHAPTER 159.001 *et seq*.

Thus, § 157.265, which mandates a 12% rate of interest on arrearage judgments, is not applicable in this case.

20. The inclusion of 12% interest in the Texas Judgment was not made in accordance with Florida law. The Florida Order does not provide for the accrual of interest. Even if interest were appropriate, § 55.03 of the Florida Civil Practice and Remedies Code provides that the Chief Financial Officer of the State of Florida will determine the judgment interest rate on an annual basis.[2] According to the Florida Department of Financial Services, the interest rate on judgments entered in 1997 never approached 12%.[3]

21. The UIFSA provides that a child support order issued in another state may not be modified unless Texas court makes specific findings that: (1) the child, the individual obligee, and the obligor do not reside in the issuing state; and (2) that the non-resident petitioner actually seeks a modification. TEXAS. FAM. CODE. ANN. § 159.611(a) (Vernon 2011). Unless those circumstances exist, a Texas court lacks subject matter jurisdiction to modify the foreign state's child support order. *Garrett*, 315 B.R. at 437; *Link v. Alvarado,* 929 S.W.2d 674, 676–77 (Tex. App.—San Antonio 1996, writ dism'd w.o.j.); *Thompson v. Thompson,* 893 S.W.2d 301, 302 (Tex. App.—Houston [1st Dist.] 1995, no writ). This Court was presented with no evidence of any such findings by the Texas Court. Consequently, this Court finds that the Texas Court lacked the jurisdiction to modify the Florida Order.

22. Even if the accrual of interest were appropriate, the Court finds that the intent of the parties is consistent with the non-accrual of interest. The Texas Judgment and the Wage Order were signed by the parties and were contemporaneously entered by the Texas Court. The Wage Order contemplates a payout of Mr. Lamar's total child support obligation with a series of bi-weekly payments which, when totaled, equal to the amount of the Arrearage and his ongoing support obligations. It strains credibility to argue that it is mere coincidence that the payments under the Wage Order equal the Arrearage and ongoing support obligation.

23. The Wage Order provides for payments through June 2008. It is instructive that the Wage Order is not open ended in its term. For example, wage orders entered in chapter 13 bankruptcy cases require an employer to withhold plan payments pending further order of the court. Furthermore, the Wage Order had a very specific and odd term - 123 months. The Court simply cannot fathom any reason that the Wage Order ends on a fixed date that provides a 123 month term and its payments equal the ongoing support obligations and the Arrearage other than it was intended to provide for the full amount of the support obligation that Mr. Lamar owed.

---

[2] FLA. STAT. ANN. § 55.03(1) (West 2011).

[3] Florida statutory interest rates are published at: http://www.myfloridacfo.com/aadir/interest.htm.

24. Based on the evidence, the Court concludes that Mr. Lamar has paid all of the amounts owed to the State of Texas under the Texas Judgment and the Wage Order. In fact, it appears that Mr. Lamar has overpaid his obligation. Suffice it to say, the Claim has been satisfied, the Debtors' objection is sustained and the Claim is disallowed in its entirety. The Court makes no findings regarding Mr. Lamar's overpayment. A separate order consistent with the foregoing will issue.

**SIGNED: November 29, 2012.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**